# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### APPEAL NO. 13-12611-DD

David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs Group, LLC,

*Plaintiffs/Appellants*,

vs.

## MOE'S SOUTHWEST GRILL, LLC, et al.,

*Defendants/Appellees*.

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION
Case No. 1:07-CV-00741-RWS
The Honorable Richard W. Story

### APPELLANTS' INITIAL BRIEF

Scott M. Ratchick
Georgia Bar No. 595136
Jill R. Johnson
Georgia Bar No. 602155
Chamberlain, Hrdlicka, White, Williams & Aughtry
191 Peachtree Street N.E., Thirty-Fourth Floor
Atlanta, Georgia 30303
(404) 659-1410

David Titshaw, et al. v. Moe's Southwest Grill, LLC, et al.

## CERTIFICATE OF INTERESTED PERSONS

COME NOW Appellants David Titshaw, Taylor Investment Partners, II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs Group, LLC, and hereby certify through undersigned counsel that persons or entities having an interest in the outcome of this appeal are as follows:

(1)    3M Restaurants, LLC – *Appellant, Plaintiff below.*

(2)    Casey Gilson P.C. – *Counsel for Appellants, Plaintiffs below David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs Group, LLC.*

(3)    Casey, Robert Edward – *Counsel for Appellants, Plaintiffs below David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs Group, LLC.*

(4)    Chamberlain, Hrdlicka, White, Williams & Aughtry – *Counsel for Appellants, Plaintiffs below David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs*

Group, LLC.

(5)    Corporate John Does X, Y, Z - *Appellee, Defendant below.*

(6)    Decker, Martha Logan - *Counsel for Appellees, Defendants below Moe's Southwest Grill, LLC; Raving Brand Holdings, Inc.; Raving Brands, Inc.; H. Martin Sprock, III; Corporate John Does X, Y, X; Individual John Does A, B, C; Moe's Southwest Holding, LLC.*

(7)    Einhorn, Robert M. – *Counsel for Appellants, Plaintiffs below David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs Group, LLC.*

(8)    Frye, Blake H. – *Counsel for Appellees, Defendants below Moe's Southwest Grill, LLC; Raving Brand Holdings, Inc.; Raving Brands, Inc.; H. Martin Sprock, III; Corporate John Does X, Y, X; Individual John Does A, B, C; Moe's Southwest Holding, LLC.*

(9)    Gray, Sandra – *Counsel for Appellants, Plaintiffs below David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs Group, LLC.*

(10)   Hill Kertscher & Wharton – *Counsel for Appellees, Defendants*

below Moe's Southwest Grill, LLC; Raving Brand Holdings, Inc.;

Raving Brands, Inc.; H. Martin Sprock, III; Corporate John Does X,

Y, X; Individual John Does A, B, C; Moe's Southwest Holding, LLC.

(11)  Hill, Steven G. - *Counsel for Appellees, Defendants below Moe's
Southwest Grill, LLC; Raving Brand Holdings, Inc.; Raving Brands,
Inc.; H. Martin Sprock, III; Corporate John Does X, Y, X; Individual
John Does A, B, C; Moe's Southwest Holding, LLC.*

(12)  Huffines, Christopher M. – *Counsel for Appellants, Plaintiffs below
David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II
Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M
Restaurants, LLC and The Jimmy Legs Group, LLC.*

(13)  Individual John Does A, B and C - *Appellee, Defendant below.*

(14)  The Jimmy Legs Group, LLC – *Appellant, Plaintiff below.*

(15)  Johnson, Jill R. – *Counsel for Appellants, Plaintiffs below David
Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley,
LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M
Restaurants, LLC and The Jimmy Legs Group, LLC.*

(16)  Kertscher, Douglas R. - *Counsel for Appellees, Defendant below
Moe's Southwest Grill, LLC; Raving Brand Holdings, Inc.; Raving*

Brands, Inc.; H. Martin Sprock, III; Corporate John Does X, Y, X; Individual John Does A, B, C; Moe's Southwest Holding, LLC.

(17)   Killingsworth, James D. – *Plaintiff below and member of Appellant Rounding Third, LLC.*

(18)   McCusker, Daniel – *Member of Appellant 3M Restaurants, LLC.*

(19)   McCusker, Tracy – *Member of Appellant 3M Restaurants, LLC.*

(20)   MH Group, LLC – *Parent company of Appellee, Defendant Moe's Southwest Grill, LLC (now named MSWG, LLC), formerly known as SWG Holdings, LLC.*

(21)   Moe's Southwest Grill, LLC - *Appellee, Defendant below.*

(22)   Moe's Southwest Holding, LLC - *Appellee, Defendant below.*

(23)   MSWG, LLC – *Current name of Appellee, Defendant Moe's Southwest Grill.*

(24)   Ratchick, Scott M. - *Counsel for Appellants, Plaintiffs below David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs Group, LLC.*

(25)   Raving Brand Holdings, Inc. - *Appellee, Defendant below.*

(26)   Ravings Brands, Inc. - *Appellee, Defendant below.*

(27) Roell, Rod – *Third-Party Defendant below and member/guarantor of Appellant The Jimmy Legs Group, LLC.*

(28) Roller, K. Brian – *Counsel for Appellants, Plaintiffs below David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs Group, LLC.*

(29) Rounding Third, LLC – *Appellant, Plaintiff below.*

(30) Shingler, George P. – *Counsel for Appellants, Plaintiffs below David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs Group, LLC.*

(31) Shingler Lewis LLC - *Counsel for Appellants, Plaintiffs below David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs Group, LLC.*

(32) Sprock III, H. Martin – *Appellee, Defendant below.*

(33) Story, Richard W. – *Judge, USDC – Northern District, Atlanta Division.*

(34) Taylor Investment Partners II, LLC d/b/a Tip Ansley LLC and Tip II

Suburban, LLC – *Appellant, Plaintiff below*.

(35)  Titshaw, David – *Appellant and Plaintiff below and member of Appellant Taylor Investment Partners II, LLC d/b/a Tip Ansley, LLC and Tip II Suburban, LLC.*

(36)  Zarco, Roberto – *Counsel for Appellants, Plaintiffs below David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC, 3M Restaurants, LLC and The Jimmy Legs Group, LLC.*

(37)  Zarco, Einhorn, Salkowski & Brito, P.A. – *Counsel for Appellants, Plaintiffs below David Titshaw, Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC, Rounding Third, LLC and The Jimmy Legs Group, LLC.*

David Titshaw, et al. v. Moe's Southwest Grill, LLC, et al.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1(a), Appellants provide the following statement that there is no parent corporation or publicly held corporation which holds more than 10% of the stock of any of the following corporate Appellants:

(1)   3M Restaurants, LLC has no parent corporation, and no publicly held corporation owns more than 10% of its membership interest.

(2)   The Jimmy Legs Group, LLC has no parent corporation, and no publicly held corporation owns more than 10% of its membership interest.

(3)   Rounding Third, LLC has no parent corporation, and no publicly held corporation owns more than 10% of its membership interest.

(4)   Taylor Investment Partners II, LLC d/b/a Tip II Ansley, LLC and Tip II Suburban, LLC has no parent corporation, and no publicly held corporation owns more than 10% of its membership interest.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Eleventh Circuit Rule 28-1(c), Plaintiffs/Appellants request oral argument of this case.  Although Plaintiffs/Appellants contend that the dispositive legal issue or issues have been authoritatively decided by recent Supreme Court and Eleventh Circuit precedents, Plaintiffs/Appellants believe that oral argument would assist the Court in understanding how the factual record in this case supports the relief requested.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .................................................. C1

CORPORATE DISCLOSURE STATEMENT ........................................ C7

STATEMENT REGARDING ORAL ARGUMENT ........................................... i

TABLE OF CONTENTS .................................................................................. ii

TABLE OF AUTHORITIES ............................................................................ v

TABLE OF RECORD REFERENCES IN THE BRIEF.......................viii

JURISDICTIONAL STATEMENT ................................................................ xii

STATEMENT OF THE ISSUES ...................................................................... 1

STATEMENT OF THE CASE ......................................................................... 2

    A.    THE NATURE OF THE CASE .................................................... 2

    B.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW ... 3

    C.    STATEMENT OF RELEVANT FACTS ........................................ 7

        1.    Moe's Made Fraudulent Omissions and Misrepresentations in Its UFOC by Failing to Disclose FeesThat Would  be  Paid  to SOS at the Franchisees' Expense.................................7

        2.    Based on the Undisclosed Kickback Arrangement, the District Court Denied Summary Judgment and Has Allowed Several Plaintiffs to Proceed to Trial on Their Fraud and Racketeering Claims ..................................................................................... 9

        3.    The District Court Granted Summary Judgment Against Plaintiffs/Appellants Because it Concluded Erroneously That the Franchisees Were on Inquiry Notice of the Kickback Arrangement as Soon as They Received Moe's 2005 UFOC..11

4.   In Fact, Plaintiffs/Appellants Were Not Put on Inquiry Notice of the Kickback Arrangement Until At Least November 2005...................................................................11

5.   After Disclosure of the Kickback Arrangement, Moe's Waived the One-Year Contractual Limitations Period...................14

6.   Defendants/Appellees' Abusive Conduct Towards Plaintiff/Appellant Titshaw..........................................15

**D.   STANDARD OF REVIEW**...................................................**15**

**SUMMARY OF THE ARGUMENT**............................................**16**

A.   The Statute of Limitations Issue.........................................16

B.   Plaintiff/Appellant Titshaw's Intentional Infliction of Emotional Distress Claim.............................................................21

**ARGUMENT** ..........................................................................**22**

I.   The District Court Erred by Granting Summary Judgment Based on a Non-Existent Legal Duty to Read the 2005 UFOC............................22

II.   Even Assuming Plaintiff/Appellants Should Have Read the 2005 UFOC, the District Court Erred By Ruling That the 2005 UFOC Contained Sufficient Information to Place Plaintiffs/Appellants on Inquiry Notice of the Illegal Kickback Scheme ..................................25

A.   Whether a "Reasonably Diligent" Plaintiff Would Have Read the 2005 UFOC and Believed it to be Evidence of Fraud is an Issue of Fact to be Decided by the Fact Finder..........................25

B.   Even if the Plaintiffs/Appellants Had Read the 2005 UFOC, Sprock's Mere Ownership Interest in SOS Did Not Necessarily Mean He Was Receiving Kickbacks...............................27

III.   The District Court Erred by Ruling that the Limitations Period Began Running When the Plaintiffs/Appellants Received the 2005 UFOC.29

A.   The District Court's Summary Judgment Order Was Based on an Old "Inquiry Notice" Rule Which the Supreme Court Had

Struck Down and Replaced with a New "Injury Discovery" Rule..................................................................29

B.    The District Court Erred by Determining the Start Date of the Statute of Limitations as a Matter of Law.......................33

IV.    The District Court Erred in Concluding That, as a Matter of Law, Plaintiff/Appellant Titshaw Failed to State a Claim for Intentional Infliction of Emotional Distress...........................................35

A.    The Defendants/Appellees' Conduct Was Sufficiently Outrageous to Support a Claim ...............................................35

B.    The District Court Erred by Refusing to Consider the Documentary Evidence Submitted by Plaintiff/Appellant Titshaw in Support of the Claim................................37

CONCLUSION ..............................................................................40

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ......................................................................41

CERTIFICATE OF SERVICE .......................................................42

iv

# TABLE OF AUTHORITIES

## CASES

Alaska Elec. Pension Fund v. Pharmacia Corp.,
     No. 03-1519, 2012 WL 1680097 (D.N.J. May 14, 2012)............................ 34

Anderson v. Liberty Lobby, Inc.,
     477 U.S. 242 (1986) ...................................................................... 16, 25

Beck v. Interstate Brands Corp.,
     953 F.2d 1275 (11th Cir. 1992)................................................................ 36

Betz v. Trainer Wortham & Co., Inc.,
     829 F. Supp. 2d 860 (N.D. Cal. 2011) ............................................... 34

Broussard v. Meineke Disc. Muffler Shops, Inc.,
     155 F.3d 331 (4th Cir. 1998).......................................................23-25

Celotex Corp. v. Catrett,
     477 U.S. 317 (1986) .......................................................................... 16

City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.,
     637 F.3d 169 (2d Cir. 2011)........................................................33-34

Fujisawa Pharm. Co. v. Kapoor,
     115 F.3d 1332 (7th Cir.1997)........................................................ 32

Garcia v. Shaw Indus., Inc.,
     741 S.E.2d 285 (Ga. App. 2013)...........................................................35

Gordon v. Frost,
     193 Ga. App. 517, 388 S.E.2d 362 (1989)...................................35

In re Miriant Corp. Sec. Lit.,
     No. 1:02-cv-1467-RWS, 2009 WL 48188 (N.D. Ga. Jan. 7, 2009) ........32-33

Kennedy v. Tallant,
     710 F.2d 711 (11th Cir. 1983)........................................................ 32

Marks v. CDW Computer Ctrs., Inc.,
    122 F.3d 363 (7th Cir. 1997)................................................................25-26

Merck & Co., Inc. v. Reynolds,
    130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010).......................................29-31, 33

Motor City Bagels, LLC v. Am. Bagel Co.,
    50 F. Supp. 2d 460 (D. Md. 1999) .................................................... 23

Shah v. Meeker,
    435 F.3d 244 (2d Cir. 2006)............................................................. 31

S. States Rack and Fixture, Inc. v. Sherwin-Williams Co.,
    318 F.3d 592 (4th Cir. 2003)............................................................ 38

Stone v. Chicago Inv. Grp., LLC,
    No. 11-cv-51, 2011 WL 6841817 (N.D. Ill. Dec. 29, 2011)................ 30

Strickland v. Norfolk S. Ry. Co.,
    No. 11-15589, 2012 WL 3640999 (11th Cir. Aug. 27, 2012) ............... 16, 25

Tello v. Dean Witter Reynolds, Inc. ("Tello II"),
    494 F.3d 956 (11th Cir. 2007).......................................................32-33

Tello v. Dean Witter Reynolds, Inc.,
    410 F.3d 1275 (11th Cir. 2005).....................................................26, 29, 32-33

Theoharous v. Fong,
    256 F.3d 1219 (11th Cir. 2001)...................................................... 31

Webb v. Rusing,
    391 S.E.2d 709 (Ga. Ct. App. 1990).................................................28-30

Yarbray v. S. Bell Telephone and Telegraph Co.,
    261 Ga. 703, 409 S.E.2d 835 .......................................................35, 36

## STATUTES

15 U.S.C. § 12 ................................................................................xii, 3

28 U.S.C. § 1291 ................................................................................xii

28 U.S.C. § 1331 ................................................................................xii

28 U.S.C. § 1367 ................................................................................xii

28 U.S.C. § 1658 ................................................................................29

O.C.G.A. § 16-14-8 ............................................................................17

O.C.G.A. § 9-3-31 ..............................................................................17

## RULES

Fed. R. App. P. 4 ...............................................................................xii

Fed. R. Civ. P. 37 .........................................................................22, 38

Fed. R. Civ. P. 56 ..............................................................................16

## REGULATIONS

16 C.F.R. § 436.1...............................................................................8, 9

## JOURNALS & LAW REVIEWS

Joseph W. Blackburn, *Seven Come Eleven: Accrual Formula Under Seventh and Eleventh Circuit "Injury Discovery" Precedent*, 40 Cumb. L. Rev. 357 (2010) .... 30

## INDEX OF RECORD CITATIONS IN THE BRIEF

| Brief Page # | | Docket/Appendix Tab # |
|---|---|---|
| xii, 3 | Complaint and Demand for Trial by Jury | 1 |
| xii, 5, 6, 8, 9, 10, 11, 14, 22, 23, 24, 28, 29, 30, 34, 35, 38 | Order entered April 17, 2012 | 285 |
| xii, 7 | Final Judgment entered May 9, 2013 | 368 |
| 3-4, 9, 34 | Second Amended Complaint against all Defendants | 94 |
| 4 | Defendants' Answer and Counterclaim | 6 |
| 4 | Defendants' Memorandum of Law in Support of Motion for Summary Judgment as to Counts I-III on the Basis of Contractual Limitations Period | 199-1 |
| 4, 8, 10, 13 | Defendants' Statement Of Material Facts To Which There Is No Genuine Issue To Be Tried | 199-2 |
| 4 | Motion For Summary Judgment As To Counts I-III On The Basis Of Contractual Limitations Period | 199 |
| 5, 8, 14, 15, 27, 28 | Plaintiffs' Response To Defendants' Motion For Summary Judgment As To Count I-III on the Basis Of Contractual Limitations | 214 |
| 5 | Defendants' Motion for Summary Judgment as to David Titshaw's Intentional Infliction of Emotional Distress Claim (FILED UNDER SEAL) | 208 |

viii

| | | |
|---|---|---|
| 5, 15, 36, 37 | Plaintiff David Titshaw's Response in Opposition to Defendants' Motion for Summary Judgment as to Intentional Infliction of Emotional Distress Claim and Exhibits | 234 |
| 6, 7 | Motion for Reconsideration of Summary Judgment as to Counts I-III with Brief In Support by 3M Restaurants, LLC, Rounding Third, LLC, TIP II Ansley, LLC, TIP II-Suburban, LLC, Taylor Investment Partners II, LLC, David Titshaw | 292 |
| 7 | Order denying Plaintiffs' Motion for Reconsideration entered on 8/3/12 | 321 |
| 7 | Motion for certification pursuant to federal rule of civil procedure 54(b) | 337 |
| 7 | Order Granting Motion for Rule 54(b) Certification | 367 |
| 7, 8, 9, 10, 14, 27, 28 | Statement of Additional Facts Which are Material and Present a Genuine Issue for trial | 215 |
| 7, 8, 14, 24, 27, 28 | Affidavit of Brian Ferris | 215-4 |
| 7, 8, 14, 24, 27, 28 | Affidavit of Neil Griffeth | 215-5 |
| 7, 8, 14, 24, 27, 28 | Affidavit of Roderick Roell | 215-6 |
| 7, 8, 15, 24, 27, 28 | Affidavit of John McKeown | 215-7 |
| 7, 8, 15, 24, 27, 28 | Affidavit of Dan McCusker | 215-8 |

ix

| | | |
|---|---|---|
| 8, 10, 12, 15, 24, 27, 28 | Affidavit of David Titshaw | 215-9 |
| 8, 15, 24, 27, 28 | Affidavit of James D. Killingsworth, Jr. | 215-10 |
| 8 | Exhibit D to Moe's Southwest Grill, LLC for Moe's Southwest Grill 2002 Uniform Franchise Offering Circular | 199-6 |
| 8, 9, 14 | Moe's Southwest Grill, LLC for Moe's Southwest Grill 2002 Uniform Franchise Offering Circular | 199-3 |
| 8 | Exhibit A To Statement Of Material Facts Re Motion For Summary Judgment As To Counts I-III On The Basis Of Contractual Limitations Period (Statement Of Additional Facts Which Are Material And Present A Genuine Issue For Trial) | 215-1 |
| 9 | Exhibit B to Statement of Material Facts re Motion for Summary Judgment as to Counts I-III on the Basis of Contractual Limitations Period (Statement of Additional Facts Which Are Material and Present a Genuine Issue for Trial) | 215-2 |
| 8, 33 | Second Amended Complaint against all Defendants | 94 |
| 13 | Exhibit A to Plaintiffs' Response to Motion for Summary Judgment as to Counts I-III on the Basis of Contractual Limitations Period | 214-1 |
| 14 | Exhibit M to Defendants' Motion for Summary Judgment as to All Claims | 209-15 |

x

14, 28      Exhibit C to Statement of Material Facts re          215-3
            Motion for Summary Judgment as to Counts I-
            III on the Basis of Contractual Limitations
            Period (Statement of Additional Facts Which
            Are Material and Present a Genuine Issue for
            Trial)

14          Exhibit C to Plaintiffs' Response to Motion for      214-3
            Summary Judgment as to Counts I-III on the
            Basis of Contractual Limitations Period

14          Exhibit H to Response to Motion for Summary          234-8
            Judgment as to Intentional Infliction of
            Emotional Distress Claim

14          Exhibit E to Response to Motion for Summary          234-5
            Judgment as to Intentional Infliction of
            Emotional Distress Claim filed by David
            Titshaw.

14, 35      Response to Motion for Summary Judgment as           234
            to Intentional Infliction of Emotional Distress
            Claim

39          Deposition of H. Martin Sprock                       281

39          Confidentiality Agreement and Protective            137
            Order

## JURISDICTIONAL STATEMENT

This case arises under Section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 12, *et seq.*, and related state law causes of action.[1]   The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.[2]   Plaintiffs/Appellants appeal a final summary judgment order entered on April 17, 2012.[3]   Final Judgment was entered by the district court as to the Defendants/Appellees on May 9, 2013.[4]   The Notice of Appeal was timely filed on June 6, 2013 pursuant to Fed. R. App. P. 4(a)(1)(A).   This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] Doc. No. 1, at ¶¶ 122-129.
[2] Id.
[3] Doc. No. 285.
[4] Doc. No. 368.

xii

## STATEMENT OF THE ISSUES

1.    Whether Defendants/Appellees satisfied their affirmative burden of proof that the one-year contractual limitations period had run on Plaintiffs/Appellants' claims against all Defendants/Appellees.

2.    Whether Plaintiffs/Appellants had a legal duty to review the 2005 Uniform Franchise Offering Circular and whether they can be charged with knowledge of its content.

3.    Whether the substance of the 2005 Uniform Franchise Offering Circular provided sufficient information about Defendants/Appellees obtaining improper kickback payments such that Plaintiffs/Appellants were put on inquiry notice of their claims as a matter of law.

4.    *Assuming arguendo* that Plaintiffs/Appellants are charged with knowledge of the content of the 2005 Uniform Franchise Offering Circular, whether Plaintiffs/Appellants acted unreasonably, as a matter of law, in failing to discover facts of the improper kickback payments based upon the information available to them, or whether the reasonableness and timeliness of their actions given the scope and content of the information is a question of fact for the jury to decide.

5.    Whether the district court erred in determining Plaintiffs/Appellants' claims were time-barred by failing to afford Plaintiffs/Appellants a reasonable

1

period of time to investigate the facts of Defendants/Appellees' kickback activities, the damages caused thereby, and whether Defendants/Appellees acted with scienter.

6.    Whether the district court erred in concluding that, as a matter of law, Plaintiff/Appellant David Titshaw failed to establish that Defendants/Appellees' conduct rose to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress.

7.    Whether the district court erred in concluding that, as a matter of law, the acts and conduct of Defendants/Appellees that form the basis of Plaintiff/Appellant David Titshaw's claim for intentional infliction of emotional distress were not directed towards Plaintiff/Appellant David Titshaw.

8.    Whether the district court erred in refusing to consider Exhibits E through I to Plaintiff/Appellant David Titshaw's *Response to Defendants' Motion for Summary Judgment as to Intentional Infliction of Emotional Distress Claim*.

## STATEMENT OF THE CASE

### A.    The Nature of the Case.

Plaintiffs/Appellants are franchisees of Defendant/Appellee Moe's Southwest Grill, LLC ("**Moe's**").  They filed this lawsuit to recover illegal, undisclosed kickbacks taken in a scheme orchestrated by Moe's former Chief Executive Officer, Defendant/Appellee Martin Sprock ("**Sprock**").  The first

2

question facing this Court is whether the district court erred by holding that Plaintiffs/Appellants' claims were time barred pursuant to a one-year limitations period set forth in their Franchise Agreements.  As shown below, the district court erred.  The contractual limitations provision does **not** govern this case because Moe's expressly waived it before Plaintiffs/Appellants' limitations period had expired.  This appeal also involves a question regarding whether the district court erred by granting summary judgment in favor of Appellees/Defendants on Plaintiff/Appellant David Titshaw's intentional infliction of emotional distress claim and refusing to consider certain documentary evidence submitted by Plaintiff/Appellant Titshaw in support of this claim.

**B.     Course of Proceedings and Disposition Below.**

In March and November 2007, Plaintiffs/Appellants filed suit for Georgia Civil RICO violations, fraud in the inducement, fraudulent omission, negligent misrepresentation, negligent omission, violation of various state unfair competition statutes, and violations of the Robinson-Patman Act, 15 U.S.C. § 12, *et seq*.[5] Plaintiff/Appellant Titshaw also asserted a claim for intentional infliction of

---

[5] This action began as two separate cases which were eventually consolidated.  The original Plaintiffs—comprising all Plaintiffs/Appellants except David Titshaw ("**Titshaw**")—filed their Complaint on March 30, 2007.  (Doc. No. 1.) Plaintiff/Appellant Titshaw filed his Complaint on November 21, 2007, in a case styled CCM Restaurants, LLC, et al. v. Moe's Southwest Grill, LLC, et al., No. 1:07-cv-2888-RWS, USDC, Northern District of Georgia, Atlanta Division.  After consolidation, the pleadings were amended twice, and the operative pleading is presently Plaintiffs/Appellants' Second Amended Complaint.  (Doc. No. 94.)

emotional distress in the Complaint.[6]  Defendants/Appellees filed their Answer and

Counterclaims on June 22, 2007.[7]

On July 6, 2011, following extensive discovery, Defendants/Appellees filed

a motion for summary judgment alleging that Plaintiffs/Appellants' claims were

time-barred as a result of a one-year contractual limitations period set by their

Franchise Agreements.[8]  Defendants/Appellees argued that the limitations period

began running as soon as Plaintiffs/Appellants [supposedly] received a copy of

Moe's 2005 Uniform Franchise Offering Circular (the "**UFOC**"), which disclosed

only that Moe's then CEO, Defendant/Appellee Sprock, held an ownership interest

in an affiliate company of Moe's called SOS Foodservices Corp. ("**SOS**").[9]

Although the 2005 UFOC did not disclose that SOS or Sprock were receiving

either kickbacks or any other form of revenue, Defendants/Appellees argued that

the disclosure was sufficient to put Plaintiffs/Appellants on inquiry notice of their

claims.[10]

Plaintiffs/Appellants opposed the "inquiry notice" argument, contending that

several genuine issues of material fact prevented summary judgment, including:

(a) Plaintiffs/Appellants had no duty or reason to read the 2005 UFOC because

---

[6] Doc. No. 94, Count IX.
[7] Doc. No. 6.
[8] Doc. No. 199-1.
[9] Doc. No. 199-2, at ¶ 14.
[10] Doc. No. 199.

4

they were not purchasing franchises at that time; and (b) even if the franchisees had read the 2005 UFOC, the disclosure of Sprock's ownership interest in SOS did not, without more, suggest that he was perpetrating an illegal kickback scheme or, for that matter, that he had been receiving any revenue from the franchisees.[11]

On August 15, 2011, Defendants/Appellees filed a separate motion for summary judgment on Plaintiff/Appellant Titshaw's Intentional Infliction of Emotional Distress Claim, arguing that Plaintiff/Appellant Titshaw had failed to meet the standard necessary to maintain such a claim.[12]    Plaintiff/Appellant Titshaw opposed this motion and presented evidence of Defendants/Appellees' abusive conduct towards him, including but not limited to certain internal emails among Moe's personnel, including Defendant/Appellee Sprock, which reflect a plan to target Plaintiff/Appellant Titshaw for removal from the Moe's system and the subsequent destruction of his financial livelihood.[13]

The district court granted both motions for summary judgment on April 17, 2012,[14] after finding that Plaintiffs/Appellants were placed on "inquiry notice" of their claims on or before August 15, 2005, the presumptive date when they

---

[11] Doc. No. 214, at pp. 1-2 (MSJ Opp'n).
[12] Doc. No. 208.
[13] Doc. No. 234.
[14] Doc. No. 285 (Order).

5

received the 2005 UFOC.[15]   Based on its "inquiry notice" determination, the district court held that the contractual limitations periods expired one year later, on or before August 15, 2006, and that Plaintiffs/Appellants' claims were time-barred because they had expired the day before Moe's August 16, 2006 waiver of the contractual limitations period.[16]   In this same order, the district court also held that Plaintiff/Appellant Titshaw failed to establish the sufficient level of outrageousness necessary to assert a claim for intentional infliction of emotional distress based upon Defendants/Appellees' conduct towards him.[17]   In making this ruling, the district court refused to consider the emails attached as Exhibits E through I to Plaintiff/Appellant Titshaw's response brief because Plaintiff/Appellant Titshaw did not produce the emails during discovery.[18]

Plaintiffs/Appellants filed a motion to reconsider the entry of summary judgment regarding the statute of limitations issue on May 15, 2012,[19] arguing among other things that "Plaintiffs were not on inquiry notice of kickback payments based on the 2005 UFOC" because the mere knowledge that Sprock held an equity interest in SOS was, by itself, insufficient to demonstrate the existence of

---

[15] For purposes of this appeal, Plaintiffs/Appellants do not dispute whether they actually received the 2005 UFOC.

[16] Doc. No. 285 (Order), at pp. 18-21.

[17] Doc. No. 285 (Order), at pp. 33-35.

[18] Id.

[19] Doc. No. 292.

6

an illegal kickback scheme being perpetrated at the franchisees' expense.[20]  The

district court denied the motion for reconsideration on August 3, 2012, again

concluding that the 2005 UFOC had placed Plaintiffs/Appellants on "inquiry

notice" of the scheme.[21]  Plaintiffs/Appellants filed a Motion for Certification

pursuant to Fed. R. Civ. P. 54(b), requesting that the district court enter final

judgment on their claims so they could proceed with an appeal.[22]  The district court

granted that Motion for Certification on May 9, 2013 and ordered the entry of final

judgment against Plaintiffs/Appellants.[23]  Final judgment was entered against all of

the Plaintiffs/Appellants on May 9, 2013.[24]

## C.    Statement of Relevant Facts.

1.    *Moe's Made Fraudulent Omissions and Misrepresentations in its UFOC by Failing to Disclose Fees That Would be Paid to SOS at the Franchisees' Expense.*

Moe's is a chain of franchised fast food restaurants.    Each of the

Plaintiffs/Appellants is a franchisee that purchased a Moe's franchise in 2001,

2002 or 2003.[25]    Accordingly, Plaintiffs/Appellants each received a pre-2004

---

[20] Doc. No. 292, p. 2.
[21] Doc. No. 321 (Order), p. 5
[22] Doc. No. 337.
[23] Doc. No. 367.
[24] Doc. No. 368.
[25] Doc. No. 215 at ¶ 6; Doc. No. 215-4, at ¶¶ 2-3 (Affidavit of Brian Ferris); Doc. No. 215-5, at ¶¶ 2-3 (Affidavit of Neil Griffith); Doc. No. 215-6, at ¶¶ 2-3 (Affidavit of Roderick Roell); Doc. No. 215-7, at ¶¶ 2-3 (Affidavit of John McKeown); Doc. No. 215-8, at ¶¶ 2-3 (Affidavit of Dan McCusker); Doc. No.

Moe's UFOC and, based in part upon the representations in those UFOCs, they executed Franchise Agreements.[26]   On its face, the Moe's UFOC explains that it is a document which the Federal Trade Commission ("**FTC**") requires a franchisor to provide to its **prospective** franchisees.[27]   Among other things, a UFOC is designed to summarize the franchise agreement in plain English and to disclose to the **potential** franchisee the estimated cost of building and running a franchise.[28] Additionally, a UFOC must disclose any revenue or other consideration that the franchisor or its affiliates will receive from the companies that supply goods and services to its franchisees.[29]   In this case, importantly, Item 8 identifies companies from whom the franchisees would be **required** to purchase goods and services in

---

215-9, at ¶¶ 2-3 (Affidavit of David Titshaw); Doc. No. 215-10, at ¶¶ 2-3 (Affidavit of James Killingsworth, Jr.); (Doc. No. 199-2, at ¶¶ 10-11 (statement of material facts); Doc. No. 199-6, pp. 21-22 (Franchise Agreement); Doc. No. 214, at pp. 7-8 (Opp'n to Motion for Summary Judgment).

[26] Id.

[27] Doc. No. 199-3, at p. 3; Doc. No. 285, at pp. 6-7.  For the purposes of this appeal, the relevant portions of the UFOCs provided to Plaintiffs/Appellants and their Franchise Agreements are identical.  (Doc. No. 285 (Order), at pp. 6-7; Doc. No. 215-1 (UFOC excerpts from 2001 through 2003)).   For convenience, Plaintiffs/Appellants will sometimes reference a copy of Moe's 2002 UFOC which is attached as Exhibit "A" to the statement of material facts filed by Defendants/Appellees in support of their summary judgment motion.  (Doc. No. 199-3).

[28] Doc. No. 285 (Order), at pp. 6-7 (district court's description of the purpose of a UFOC); Doc. No. 199-3, at p. 3 (contents of Moe's 2002 UFOC describing FTC disclosure requirements).

[29] 16 C.F.R. § 436.1(11)

order to operate a Moe's restaurant (hereinafter **"Moe's System Suppliers"**),[30] although the UFOC states that "neither [Moe's] nor any of our affiliates will derive any income from these purchases."[31]

Moe's UFOCs contained material misrepresentations or omissions concerning an existing kickback arrangement involving SOS and Sprock.[32] Generally, however, SOS—which is owned 50% by Sprock—received an undisclosed fee every time the Plaintiffs/Appellants purchased food or other goods from a certain Moe's System Supplier.[33]  Pursuant to the FTC Franchise Rule,[34] both the fee and the relationship with SOS should have been—but were not—disclosed in Moe's UFOCs.[35]

---

[30] Doc. 215-2; Doc. No. 199-3, at pp. 13-14.
[31] Doc. 215-2; Doc. No. 215, at ¶ 2; Doc. No. 199-3, at p. 13.
[32] Doc. No. 94, ¶ 61.  The specific allegations concerning the kickbacks are stated in Paragraphs 49-72 of the Second Amended Complaint.  (Doc. No. 94, ¶¶ 49-72).
[33] Doc. No. 94, ¶¶ 65-66.
[34] 16 C.F.R. § 436.1 (requiring a franchisor to disclose "any revenue or other consideration to be received by the Franchisor or persons affiliated with the Franchisor from suppliers to the prospective Franchisee in consideration for goods and services which the franchisor requires or advises the Franchisee to obtain from such suppliers").
[35] Doc. No. 94, ¶¶ 57-72; Doc. No. 285 (Order), at p. 28; 16 C.F.R. § 436.1(11).

9

2.    Based on the Undisclosed Kickback Arrangement, the District Court Denied Summary Judgment and Allowed Several Plaintiffs to Proceed to Trial on Their Fraud and Racketeering Claims.

It is undisputed that Sprock holds an ownership interest in SOS,[36] and the evidence in the record indicates that SOS was receiving undisclosed kickback income when the franchisees made purchases through a certain Moe's System Supplier.[37]   Significantly, the district court ruled that the relationship between Sprock and SOS should have been—but was not—disclosed in Moe's pre-2004 UFOCs,[38] stating:

> Plaintiffs have pointed to evidence that the federal regulations charged Sprock with disclosing any revenues "to be received," that Sprock had a "kickback" arrangement with LaGratta as of 2001, and that with knowledge of the agreement to split net revenues, Sprock knowingly failed to disclose that he had an SOS interest since 2001.  The Court finds that the ability to receive proceeds under the arrangement, even though profits did not yet exist, would have required disclosure as the ability to obtain income would be income "to be received" under the arrangement.[39]

Thus, the district court ruled that those plaintiffs whose claims were not time barred had provided sufficient evidence to survive summary judgment on their fraud and racketeering claims.[40]

---

[36] Doc. No. 199-2, at ¶ 14.

[37] Doc. No. 215, at ¶¶ 8-9; Doc. No. 215-9, at ¶¶ 27-30.

[38] Doc. No. 285 (Order), at pp. 28-31.

[39] Doc. No. 285 (Order), at p. 28.

[40] Doc. No. 285 (Order), at pp. 28-31.

10

3.    The District Court Granted Summary Judgment Against Plaintiffs/Appellants Because it Concluded Erroneously That these Franchisees Were on Inquiry Notice of the Kickback Arrangement as Soon as They Received Moe's 2005 UFOC.

Wholly apart from the merits of the case, the district court held that the Franchise Agreements signed by the Plaintiffs/Appellants contained limitations provisions pursuant to which any claim relating to the Franchise Agreements would expire "within one (1) year from the discovery of the facts giving rise to any such claim or action...."[41] The district court then found that Moe's had published a new UFOC in 2005 which disclosed that Defendant/Appellee Sprock held an equity interest in SOS.[42]    Additionally, the district court found that Plaintiffs/Appellants received the 2005 UFOC before August 15, 2005, and that they were therefore on "inquiry notice" of the illegal kickback scheme at least as of that date.[43] Thus, the district court concluded that Plaintiffs/Appellants' one-year limitations period expired on the day before August 16, 2006, when Moe's executed a contractual waiver of the one-year limitations period.[44]

4.    In Fact, Plaintiffs/Appellants Were Not Put on Inquiry Notice of the Kickback Arrangement Until At Least November 2005.

In about August 2005, various Moe's franchisees began to express concerns to Moe's regarding issues related to food quality and competitive bidding for food

---

[41] Doc. No. 285 (Order), at p. 16.
[42] Doc. No. 285 (Order), at pp. 18-21.
[43] Doc. No. 285 (Order), at pp. 18-21.
[44] Doc. No. 285 (Order), at pp. 18-21.

11

items.[45]  Discussions ensued, and Moe's conducted a Franchise Advisory Council meeting in or around November 2005.[46]  At this meeting, an individual named Steve Salzberg disclosed **for the first time** that there were additional charges, undisclosed on the invoices to the franchisees, for payments to SOS, which was partially owned by Sprock.[47]  Mr. Salzberg also disclosed that he was receiving various commissions, rebates, and other fees that were added to the purchase price of supplies sold to Moe's Franchisees, including fees added on top of the invoices being sent by one of the Moe's System Suppliers, I.J. Food Distributor, directly to the franchisees.[48]  Mr. Salzberg refused to disclose the amounts or sources of those additional fees paid by the Franchisees, asserting that it was "none of their damn business."[49]  The attending franchisees were in shock at this revelation, and the Moe's corporate officials present at this meeting all disclaimed any knowledge of these fees, rebates, and commissions being paid to SOS and Sprock.[50]

At a subsequent meeting in late 2005, the Atlanta Advertising Committee requested that I.J. Food Distributor appear and discuss the supply chain matters.[51] During that meeting, the I.J. Food Distributor representative acknowledged that

---

[45] See, e.g., Doc. No. 215-9, at ¶ 27 (Titshaw Affidavit).
[46] See, e.g., Doc. No. 215-9, at ¶ 28 (Titshaw Affidavit).
[47] See, e.g., Doc. No. 215-9, at ¶ 28 (Titshaw Affidavit).
[48] See, e.g., Doc. No. 215-9, at ¶¶ 28-29 (Titshaw Affidavit).
[49] See, e.g., Doc. No. 215-9, at ¶ 29 (Titshaw Affidavit).
[50] Doc. No. 215-9, at ¶ 29 (Titshaw Affidavit).
[51] Doc. No. 215-9, at ¶ 30 (Titshaw Affidavit).

there was an undisclosed additional fee being added to all of the Moe's franchisees' invoices, and subsequent discovery has shown that Sprock was receiving fifty per cent (50%) of all commissions, kickbacks, rebates, and other payments received by Mr. Salzberg's company from I.J. Food Distributor.[52]

Unlike these disclosures made during these 2005 meetings, Moe's 2005 UFOC says nothing concerning any revenue or fees that may have been paid to SOS or Sprock.[53]  Rather, the 2005 UFOC merely states:

> One of our approved suppliers, Systems Opportunities Savings ("SOS") provides food brokerage services to MOE's franchisees. SOS is indirectly related to us through Martin Sprock, our Chief Executive Officer and President, who is a 50% equity holder in SOS. Individually, Mr. Sprock also holds a small minority interest in two other suppliers in our system: Atlanta Lighting and Kudzu International.  We do not derive revenue, directly or indirectly, from any of these suppliers in connection with the services or products they provide to our franchisees.[54]

While this "disclosure" states that Sprock owns a portion of SOS, nothing in the disclosure even suggests that SOS is operating for profit, much less that it was taking undisclosed fees from the Moe's franchisees.[55]  In fact, if SOS had been providing food brokerage consulting services free of charge, it would have been

---

[52] Doc. No. 214-1, at p. 2 (Martin Sprock email).
[53] Doc. No. 199-2, at ¶ 14
[54] Id.
[55] Id.

13

entirely consistent with Item 11 of Moe's UFOC, which required Moe's to provide cost-free consulting services to the franchisees.[56]

5.    After Disclosure of the Kickback Arrangement, Moe's Waived the One-Year Contractual Limitations Period.

After the November 2005 meetings, Moe's executed a document titled "Waiver of One-Year Contractual Limitation on Claims and Action" (hereinafter **"Limitations Waiver"**) which, on its face, applied to all claims meeting the following criteria: "(1) The claim or action was not otherwise time barred by the one-year limitation period as of August 16, 2006;" and "(2) The Franchise Agreement involved was executed or has an effective date prior to August 16, 2006."[57]    It is undisputed that Plaintiffs/Appellants meet the second criteria.[58] Whether they met the first is the primary issue of this appeal.

---

[56] Doc. No. 214, at pp. 9-10; Doc. No. 215.  Specifically, subparagraph 4 of UFOC Item 11 requires Moe's to provide certain "counseling and advisory services … related to operation of MOE'S SOUTHWEST GRILL restaurants" including "purchasing and inventory control," and a variety of other activities.  (Doc. No. 199-3, at p. 17.)  Moreover, paragraph 9 of the Franchise Agreements required Moe's to provide counseling services concerning topics such as "recipes, food, formulas and specifications" and "purchasing and inventory control" at "no charge to the franchisees." (Doc. No. 214, at pp. 9-10; Doc. No. 215, at ¶ 4; Doc. No. 215-3.)  This disclosure in the 2005 UFOC does nothing to substantively change Moe's 2004 UFOC disclosure that SOS "provides food brokerage services to Moe's franchisees.  Franchisees are able to use SOS on a voluntary basis.  We do not derive revenue, directly or indirectly, from SOS in connection with the services SOS provides to our franchisees." (Doc. 209-15, p. 5).

[57] Doc. No. 214-3; Doc. No. 285 (Order), at p. 17.

[58] Doc. No. 215, at ¶ 6; Doc. No. 215-4, at ¶¶ 2-3 (Affidavit of Brian Ferris); Doc. No. 215-5, at ¶¶ 2-3 (Affidavit of Neil Griffith); Doc. No. 215-6, at ¶¶ 2-3

14

6.    Defendants/Appellees' Abusive Conduct Towards Plaintiff/Appellant Titshaw.

Following the franchisees' discovery of Defendant/Appellee Sprock's scheme, Plaintiff/Appellant Titshaw became the focus of Sprock's anger and resentment.  Sprock was angry because he had gotten caught and been exposed for his illegal activities and expressed his intention to "get even" with Plaintiff/Appellant Titshaw by destroying his livelihood forcing him out of the Moe's system.[59]    Sprock indicated that Moe's should be leaning on Plaintiff/Appellant Titshaw to sell and should use audits and "ROSE Reports" (Moe's internal restaurant scoring system) to create a paper trail of trumped up poor performance.[60]  Sprock and Moe's began this abusive conduct in 2005 and have continued it through the present, harassing Plaintiff/Appellant Titshaw and making every effort to terminate his franchises.[61]

D.    **Standard of Review**

This is an appeal from a summary judgment order and final judgment in favor of Defendants/Appellees.  This Court reviews summary judgments *de novo,*

---

(Affidavit of Roderick Roell); Doc. No. 215-7, at ¶¶ 2-3 (Affidavit of John McKeown); Doc. No. 215-8, at ¶¶ 2-3 (Affidavit of Dan McCusker); Doc. No. 215-9, at ¶¶ 2-3 (Affidavit of David Titshaw); Doc. No. 215-10, at ¶¶ 2-3 (Affidavit of James Killingsworth, Jr.); Doc. No. 214, at pp. 7-8 (Opp'n to Motion for Summary Judgment).
[59] Doc. 234 (Titshaw's Opp'n to Motion for Summary Judgment), Exh. H.
[60] Doc. 234, (Titshaw's Opp'n to Motion for Summary Judgment), Exh. E.
[61] Doc. 234, (Titshaw's Opp'n to Motion for Summary Judgment), Exh. H.

"viewing all evidence and drawing all reasonable factual inferences in favor of the nonmoving party," which in this case is the Plaintiff/Appellants. <u>Strickland v. Norfolk S. Ry. Co.</u>, No. 11-15589, 2012 WL 3640999, at *1 (11th Cir. Aug. 27, 2012). Under Fed. R. Civ. P. 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, when he is ruling on a motion for summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

## SUMMARY OF THE ARGUMENT

A.    The Statute of Limitations Issue.

Under the Franchise Agreements, the one-year limitations period begins running upon "the discovery of the facts giving rise to" the claims. The illegal kickback arrangement "giving rise to" the claims in this lawsuit was not disclosed until November 2005. Assuming *arguendo* Plaintiffs/Appellants' claims accrued immediately upon the November 2005 disclosure, the limitations period would not have expired until November 2006. However, on August 16, 2006, about three months before Plaintiffs/Appellants' claims would have expired, Moe's executed a

16

waiver of the contractual limitations period. At that point, Plaintiffs/Appellants' claims defaulted to their usual statutes of limitation, *i.e.*, four years for injuries to personalty, and five years for racketeering. O.C.G.A. §§ 9-3-31, 16-14-8. Because Plaintiffs/Appellants filed suit by November 2007, their claims were timely, and the order granting summary judgment was in error. The **only** way summary judgment could have been proper is if Plaintiffs/Appellants discovered "the facts giving rise to" their claims on or before August 15, 2005.[62] The district court made this finding by imputing knowledge of the fraudulent kickback scheme to the Plaintiffs/Appellants based solely on their receipt of Moe's 2005 UFOC. This finding was clear error for several reasons.

*First*, the district court erred by imposing an obligation on Plaintiffs/Appellants to read the 2005 UFOC. A UFOC is a document which the FTC requires a franchisor to provide to its **potential** franchisees before they execute a franchise agreement. In this case, all of the Plaintiffs/Appellants were existing franchisees and none were interested in purchasing a new Moe's franchise when they received the 2005 UFOC.[63] The district court nevertheless held as a matter of law that a "reasonably diligent" franchisee would have read the 2005

---

[62] If Plaintiffs/Appellants' claims accrued on August 16, 2005 or later, they would not have expired prior to Moe's execution of the Limitations Waiver, and there would be no factual basis for the summary judgment order.

[63] Plaintiff/Appellant The Jimmy Legs Group was in negotiations for a second store during the 2005-2006 time period and therefore does not join in the argument based upon the existence of a duty to read the 2005 UFOC.

17

UFOC anyway.  However, as discussed below, there is no legal duty to do so. Further, Plaintiffs/Appellants supplied affidavits explaining that there is no practical reason to read a UFOC outside of purchasing a new franchise.  Thus, the district court was faced with genuine issues of material fact concerning whether, when, and to what extent a reasonable franchisee should have read the 2005 UFOC.  Instead of denying summary judgment, the district court committed error by weighing the evidence and making factual determinations without giving Plaintiffs/Appellants the benefit of a proper trial.

*Second*, even if Plaintiffs/Appellants should have read the 2005 UFOC, its contents were insufficient to trigger the running of the one-year contractual limitations period because the UFOC does not disclose "the facts giving rise to" Plaintiffs/Appellants' claims.  The district court held that the UFOC's disclosure of Sprock's relationship with SOS was tantamount to disclosure of the entire kickback scheme, but Plaintiffs/Appellants supplied evidence to the contrary. Significantly, the 2005 UFOC contains no information even suggesting that SOS was generating revenue, much less kickbacks.  Instead, the 2005 UFOC covered up Defendants/Appellees' fraud by stating that revenues were **not** being derived by Moe's or its affiliates based upon purchases from system suppliers (such as SOS). Further, the Franchise Agreements stated that Plaintiffs/Appellants would be supplied with advisory services—such as those being provided by SOS—**at no**

**additional costs.** Thus, notwithstanding the 2005 UFOC, it was entirely plausible that SOS was providing services to franchisees for free, without receiving improper kickbacks. In fact, the fraudulent aspect of Sprock's relationship with SOS did not come to light until the November 2005 meetings, when Mr. Salzberg disclosed **for the first time** that SOS and Sprock were receiving previously undisclosed kickback revenue. Thus, for summary judgment purposes, the district court was required to construe the evidence in Plaintiffs/Appellants' favor and hold that the November 2005 meetings—as opposed to the distribution of the 2005 UFOC—marked the first point in time when the Plaintiffs/Appellants should have begun to suspect the fraud which formed the basis of their claims. The district court committed clear error by weighing the evidence and drawing inferences against Plaintiffs/Appellants, the non-movants.

*Third*, even assuming the November 2005 admissions (or the distribution of the 2005 UFOC) constituted "storm warnings" of fraud, this alone was insufficient to start the running of Plaintiffs/Appellants' contractual limitations period. The Franchise Agreements state that Plaintiffs/Appellants' claims would not accrue until the "the discovery of **the facts** giving rise to any such claim or action...." Supreme Court precedent holds that this language guarantees a plaintiff a reasonable opportunity to discover "the facts" sufficient to support every element of his cause of action, including damages and scienter. Thus, even after the

occurrence of a "storm warning," plaintiffs are entitled to a "period of reasonable diligence" to investigate whether they could plead sufficient, specific facts to support **every element** of their claims. In this case, even after the November 2005 meetings (or the distribution of the 2005 UFOC), Plaintiffs/Appellants should have been afforded a "period of reasonable diligence" to investigate: (1) whether the alleged kickbacks were actually occurring; (2) if so, whether the alleged kickbacks were occurring at the expense of Plaintiffs/Appellants (instead of, say, at the expense of Moe's); and (3) if so, whether Defendants/Appellees had acted with scienter. The district court ignored this law, failed to make any finding concerning the period of reasonable diligence, and erroneously charged Plaintiffs/Appellants with "inquiry notice" of all facts revealed in this litigation as of the date they received the 2005 UFOC. By applying the wrong standard, the district court robbed Plaintiffs/Appellants of their "period of reasonable diligence," resulting in the improper dismissal of their legitimate fraud and racketeering claims.

*Fourth* and finally, even if the district court had properly applied the Supreme Court precedent discussed above, the court nonetheless erred by making a finding as a matter of law that the 2005 UFOC—as opposed to the November 2005 meetings—was the "storm warning" that would have triggered the period of reasonable diligence. Eleventh Circuit precedent clearly holds that whether an

20

event constitutes a "storm warning" is an issue of fact inappropriate for summary judgment, which is certainly the case here.

B.    Plaintiff/Appellant Titshaw's Intentional Infliction of Emotional Distress Claim.

The district court erred by determining as a matter of law that the conduct of Sprock towards Plaintiff/Appellant Titshaw did not rise to the sufficient level of outrageousness to sustain a claim for intentional infliction of emotional distress. Sprock's and Moe's conduct goes beyond the bounds of decency and it is utterly intolerable to, over a period of years, continuously threaten to take away an individual's livelihood and means of supporting his family to satisfy a personal vendetta.  No reasonable person should be expected to endure such mental stress and anguish for years.  Moreover, the fact that Sprock never expressly stated to Plaintiff/Appellant Titshaw the nature of his plan to "get even" with Plaintiff/Appellant Titshaw does not make the effects of that plan any less real. The outrageous conduct must be directed towards the plaintiff, and in this case, Plaintiff/Appellant Titshaw was the direct victim of Sprock's plan to ruin him financially. Finally, the district court erroneously refused to consider certain emails submitted in connection with Plaintiff/Appellant Titshaw's opposition to Defendants/Appellees summary judgment motion because Plaintiff/Appellant Titshaw did not produce these emails in discovery.  However, these emails were internal emails between Sprock and other individuals at Moe's.    The

21

Defendants/Appellees should be charged with awareness and knowledge of their own documents, rendering any failure to produce them by the Plaintiffs/Appellants harmless under Fed. R. Civ. P. 37(c)(1).

## ARGUMENT

I.  **THE DISTRICT COURT ERRED BY GRANTING SUMMARY JUDGMENT BASED ON A NON-EXISTENT LEGAL DUTY TO READ THE 2005 UFOC**.

The summary judgment order was based, in significant part, upon the finding that "a reasonably diligent plaintiff would have read the 2005 UFOC."[64] The court held that the 2005 UFOC was "similar to a prospectus which a shareholder would obtain from a corporation, and a diligent plaintiff would seek to discover how—if any—its obligations have changed and what new disclosures its franchisor was making."[65]    According to the district court, because Plaintiffs/Appellants *should* have read this document, they *should* have discovered that Sprock held an equity interest in SOS, and from this, they *should* have discovered that Sprock was receiving improper kickbacks.[66]

By granting summary judgment, the district court has therefore imposed a *de facto* legal duty on Plaintiffs/Appellants to read UFOC documents even when they

---

[64] Doc. No. 285 (Order), at pp. 19-20.
[65] Id.
[66] Id.

22

are not purchasing new franchises.[67]  This entirely new obligation is not supported by law.  Rather, precedent recognizes that franchisees do not have a duty to read a UFOC except when purchasing a new franchise.  In <u>Motor City Bagels, LLC v. American Bagel Co.</u>, 50 F. Supp. 2d 460, 469-70 (D. Md. 1999), the district court held, on summary judgment, that the plaintiff could only be charged with the knowledge of the UFOC he had actually and officially received prior to signing his franchise agreement.[68]  Whether a reasonable plaintiff should read a subsequent or amended UFOC was held to be an issue of material fact for the jury.  <u>Id</u>.

In <u>Broussard v. Meineke Disc. Muffler Shops, Inc.</u>, 155 F.3d 331, 335 (4th Cir. 1998), the facts disclosing the plaintiffs' claim were contained in a UFOC document, but the plaintiffs claimed not to have reviewed the document.  <u>Id</u>.  In particular, **one of the plaintiffs claimed not to have seen the UFOC because he had not bought a franchise in 3 or 4 years, and he claimed that a UFOC is not received outside of purchasing a franchise**.  <u>Id</u>. at 342-43.  When considering

---

[67] Doc. No. 285, at pp. 118-19.  Although the district court attempted to couch this issue as one of due diligence as opposed to a legal duty to read, this is a distinction without a difference.  Under either rubric, the district court has essentially charged Plaintiffs/Appellants with the obligation to review every new UFOC published by Moe's or run the risk of forfeiting legal claims.

[68] In <u>Motor City Bagels</u>, the plaintiff was actually in the process of purchasing a franchise.  50 F. Supp. 2d at 469-70.  Although the court in <u>Motor City Bagels</u> suggested that the plaintiff should have read the amended UFOC if he had received it, this is distinguishable from the facts of the instant case in which none of the Plaintiffs/Appellants (other than The Jimmy Legs Group) were purchasing a new franchise.

23

whether to equitably toll the statute of limitations, the Fourth Circuit directed the

district court to look individually at when each of the plaintiffs had received, read

and understood the written materials from the defendant (presumably including the

UFOC). Id. Significantly, the Fourth Circuit did not simply impute the knowledge

disclosed in the UFOC to the plaintiffs as the district court did in the instant case.

Id. In fact, after extensive research, Plaintiffs/Appellants have not located any case

in which a party has been charged with a duty to read a UFOC *unless* he was

actually negotiating or executing a franchise agreement, which is not the case here.

In this case, the district court erred by imposing such a new duty upon the

Plaintiffs/Appellants. [69]

---

[69] The district court also erred by making a factual finding that a reasonably
diligent franchisee should have read the 2005 UFOC. (Doc. No. 285 (Order), at pp.
19-20). This was a disputed issue of fact in this case. Each of the
Plaintiffs/Appellants provided a sworn statement explaining that they would have
no reason to read the 2005 UFOC unless they were purchasing a new franchise.
(Doc. No. 215-9, at ¶ 9 (Affidavit of David Titshaw)). Moreover,
Plaintiffs/Appellants believed that their individual relationships with Moe's were
governed by their own Franchise Agreements and the UFOCs they had received
contemporaneous with those agreements, and that nothing in an amended UFOC
could change their contractual relationships with Moe's. (Doc. No. 215-4, at ¶ 11
(Affidavit of Brian Ferris, in which he swears that he has no recollection of ever
reading the 2005 UFOC, and that he had no reason to do so because he was not
acquiring another Moe's franchise); Doc. No. 215-5, at ¶¶ 10-11 (Affidavit of Neil
Griffith); Doc. No. 215-6, at ¶¶ 10-11 (Affidavit of Roderick Roell); Doc. No. 215-
7, at ¶¶ 10-11 (Affidavit of John McKeown); Doc. No. 215-8, at ¶¶ 10-11
(Affidavit of Dan McCusker); Doc. No. 215-9, at ¶ 9 (Affidavit of David Titshaw);
Doc. No. 215-10, at ¶¶ 9-11 (Affidavit of James Killingsworth, Jr.)). For example,
Plaintiff/Appellant Titshaw swore, "[m]y relationship with Moe's was governed by
the UFOCs which I had received prior to entering into the executed Franchise

24

II. **EVEN ASSUMING PLAINTIFFS/APPELLANTS SHOULD HAVE READ THE 2005 UFOC, THE DISTRICT COURT ERRED BY RULING THAT THE 2005 UFOC CONTAINED SUFFICIENT INFORMATION TO PLACE PLAINTIFFS/APPELLANTS ON INQUIRY NOTICE OF THE ILLEGAL KICKBACK SCHEME.**

A.  Whether a "Reasonably Diligent" Plaintiff Would Have Read the 2005 UFOC and Believed it to be Evidence of Fraud is an Issue of Fact to be Decided by the Fact Finder.

Even assuming *arguendo* if the district court is correct that a "reasonably diligent" plaintiff would have read the 2005 UFOC, the issue of whether the 2005 UFOC constituted sufficient notice of fraud is a fact issue for the jury. Marks v. CDW Computer Ctrs., Inc., 122 F.3d 363, 368-69 (7th Cir. 1997). The Seventh Circuit has explained:

> Assuming that "bad blood" or "storm warnings" like those the district court listed—the disagreement over Krasny's attempt to increase his compensation, Krasny's refusal to reveal information to Marks, Marks's termination, and the coercive nature of the transaction covered by the Buyout Agreement—could be sufficient to place someone on inquiry notice, **we believe it is abundantly clear that such a question would be one for the trier of fact in this case.** Except in the most extreme circumstances, and we find that the facts in this case are not July 12, 2013even close to extreme, **the trier of fact should determine when, and under what circumstances, such**

Agreements." Doc. No. 215-9, at ¶ 9. This is identical to the position taken by the plaintiff in Broussard, who claimed not to have seen the UFOC in question because he had not bought a franchise in 3 or 4 years. 155 F.3d at 335. Thus, it was reasonable for Plaintiffs/Appellants to ignore the 2005 UFOC. For summary judgment purposes, the district court was required to construe this evidence in Plaintiffs/Appellants' favor, and to preserve the issue of reasonability for resolution at trial. Strickland, 2012 WL 3640999, at *1; Anderson, 477 U.S. at 255. The district court failed to draw the proper inferences and committed error by substituting its own conclusions for facts. Id.

25

> **relations would be sufficiently adversarial to trigger the running of the statute of limitations**, keeping in mind that the relationship between a buyer and seller of a security is an inherently adversarial one. See Mosesian v. Peat, Marwick, Mitchell & Co., 727 F.2d 873, 877 (9th Cir.1984), certiorari denied, 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265; Tomera, 511 F.2d at 510-511. Rational acting parties to a commercial transaction always use their bargaining strength to secure the best deal possible for themselves; that action, alone, does not put a reasonable person on inquiry notice of the existence of fraud. Similarly, people have acrimonious relationships all the time without putting one party on inquiry notice. **The district court improperly substituted its own conclusions for facts.**

Marks, 122 F.3d at 368-69 (footnotes omitted) (emphasis added). Similarly, the Eleventh Circuit holds, "[w]hether a plaintiff had sufficient facts to place him on inquiry notice of a claim for securities fraud ... is a question of fact, and as such is often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)." Tello v. Dean Witter Reynolds, Inc. (hereinafter "Tello I"), 410 F.3d 1275, 1283 (11th Cir. 2005) (internal quotations omitted)[70].

In this case, whether the 2005 UFOC constituted a "storm warning" that should have excited the franchisees' attention was a fact issue. Marks, 122 F.3d at 368-69. The district court erred by weighing the evidence, drawing the inferences against the non-movants, and deciding on summary judgment an issue which should have been preserved for trial.

---

[70] The district court analogized the instant claims to a federal securities case.

26

B.    Even if the Plaintiffs/Appellants Had Read the 2005 UFOC, Sprock's Mere Ownership Interest in SOS Did Not Necessarily Mean He Was Receiving Kickbacks.

In this case, there was substantial evidence that the "disclosure" made in the 2005 UFOC was insufficient to put the parties on notice of the illegal kickbacks. Significantly, the 2005 UFOC made no admissions whatsoever concerning revenue or kickbacks to SOS, and several of the Plaintiffs/Appellants testified that the 2005 UFOC, without more, was insufficient to alert them to the fraud which was eventually uncovered.[71] More importantly, the 2005 UFOC stated specifically that revenues were **not** being derived by Moe's or its affiliates based upon purchases from system suppliers (such as SOS), and, critically, the parties' Franchise Agreements expressly provided that the franchisees would be provided advisory

---

[71] Doc No. 215 ¶¶ 8-9; Doc. No. 215-4, at ¶¶ 19-22 (Affidavit of Brian Ferris); Doc. No. 215-5, at ¶¶ 12-15 (Affidavit of Neil Griffith); Doc. No. 215-6, at ¶¶ 12-15 (Affidavit of Roderick Roell); Doc. No. 215-7, at ¶¶ 12-15 (Affidavit of John McKeown); Doc. No. 215-8, at ¶¶ 12-15 (Affidavit of Dan McCusker); Doc. No. 215-9, at ¶¶ 11-14 (Affidavit of David Titshaw); Doc. No. 215-10, at ¶¶ 7-11 (Affidavit of James Killingsworth, Jr.); Doc. No. 214, at pp. 7-8 (Opp'n to Motion for Summary Judgment).  Because no facts had been disclosed concerning the secret kickback scheme which was being perpetrated, some of the Plaintiffs/Appellants even viewed Sprock's involvement with SOS as a positive sign that he had a vested interest in the profitability of the franchises. (Doc. No. 215-4, at ¶ 9). Others simply paid the disclosure concerning Sprock and SOS no mind because they believed their Franchise Agreements shielded them from paying for the type of consulting services being provided by SOS. (Doc. No. 215-5, at ¶ 12 (Affidavit of Neil Griffith); Doc. No. 215-10, at ¶¶ 7-11 (Affidavit of James Killingsworth, Jr.)).

27

services—such as those provided by SOS—**at no additional costs.**[72]  It was entirely plausible, then, that SOS was providing its services to franchisees at no additional costs, regardless of Sprock's ownership.

The district court cited <u>Webb v. Rusing</u>, 391 S.E.2d 709, 711 (Ga. Ct. App. 1990), for the proposition that "[n]otice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry may have led."[73]  However, as explained above, Plaintiffs/Appellants have testified that the disclosure in the 2005 UFOC that Sprock held an interest in SOS was not tantamount to a disclosure that SOS was actually receiving kickbacks. There were plenty of alternative, legitimate scenarios under which Sprock and SOS would not have been taking undisclosed payments from the franchisees. Moreover, Plaintiffs/Appellants have provided evidence that the first time they became aware of the kickback scheme was during the November 2005 meetings.[74]

Whether disclosure of Sprock's mere ownership interest in SOS placed Plaintiffs/Appellants on notice of the much more sinister (and undisclosed)

---

[72] Paragraph 9 of the Franchise Agreements required Moe's to provide certain consulting services at "no charge to the franchisees." (Doc. No. 214, at pp. 9-10; Doc. No. 215, at ¶ 4; Doc. No. 215-3.)

[73] Doc. No. 285 (Order), at p. 21.

[74] Doc. No. 215-4, at ¶ 13 (Affidavit of Brian Ferris); Doc. No. 215-5, at ¶¶ 11-13 (Affidavit of Neil Griffith); Doc. No. 215-6, at ¶¶ 11-13 (Affidavit of Roderick Roell); Doc. No. 215-7, at ¶¶ 11-13 (Affidavit of John McKeown); Doc. No. 215-8, at ¶¶ 11-13 (Affidavit of Dan McCusker); Doc. No. 215-9, at ¶¶ 11-13 (Affidavit of David Titshaw); Doc. No. 215-10, at ¶ 9 (Affidavit of James Killingsworth, Jr.).

kickback scheme is a genuinely disputed issue of material fact, and the district court erred by failing to resolve this issue in favor of Plaintiffs/Appellants.

**III. THE DISTRICT COURT ERRED BY RULING THAT THE LIMITATIONS PERIOD BEGAN RUNNING WHEN THE PLAINTIFFS/APPELLANTS RECEIVED THE 2005 UFOC.**

A.   The District Court's Summary Judgment Order Was Based on an Old "Inquiry Notice" Rule Which the Supreme Court Had Struck Down and Replaced With a New "Injury Discovery" Rule.

In its summary judgment order, the district court applied the Franchise Agreements' one-year limitations period, which required that Plaintiffs/Appellants' claims "shall be commenced within one (1) year *from the discovery of the facts* giving rise to any such claim or action, or such claim or action shall be barred[.]"[75] In construing this provision, the district court analogized this situation to the statute of limitations applicable to federal securities fraud cases,[76] which also requires claims to be filed not later than two years "*after the discovery of the facts* constituting the violation...." 28 U.S.C. § 1658(b); Tello I, 410 F.3d at 1279. While the securities fraud analogy may have been apt, the district court applied it incorrectly, failing to follow the recent Supreme Court decision in Merck & Co., Inc. v. Reynolds, 130 S. Ct. 1784, 1798, 176 L. Ed. 2d 582 (2010), which is described in more detail below. Instead, the district court applied an old "inquiry notice" rule from Webb v. Rusing, which states that "[n]otice sufficient to excite

---

[75] Doc. No. 285 (Order), at p. 16.
[76] Doc. No. 285 (Order), at pp. 19-20.

attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry may have led."[77]   Applying the old rule, coupled with the assumption that Plaintiff/Appellants either had or should have read Moe's 2005 UFOC, the court held that Plaintiff/Appellants "had knowledge that Sprock held an ownership percentage in SOS before August 15, 2005, and thus the Plaintiffs had inquiry notice of the kickback."[78]   Accordingly, the district court began to run the statute of limitations immediately from the date when the Plaintiffs/Appellants received the 2005 UFOC without allowing any reasonable opportunity to investigate.[79]

This old version of the "inquiry notice" rule applied by the district court was expressly struck down by the Supreme Court in <u>Merck</u> and replaced with a new "injury discovery" rule. <u>Stone v. Chicago Inv. Grp., LLC</u>, No. 11-cv-51, 2011 WL 6841817, at pp. *1-2 (N.D. Ill. Dec. 29, 2011) (describing the effect of the <u>Merck</u> decision on the old inquiry notice rule); Joseph W. Blackburn, <u>Seven Come Eleven: Accrual Formula Under Seventh and Eleventh Circuit "Injury Discovery" Precedent</u>, 40 Cumb. L. Rev. 357 (2010).

In <u>Merck</u>, the Supreme Court granted <em>certiorari</em> specifically to address a three-way circuit split concerning when a statute of limitations begins to run after a

---

[77] Doc. No. 285 (Order), pp. 18, 21 (citing 391 S.E.2d at 711) (emphasis added).
[78] Doc. No. 285 (Order), p. 18 (emphasis added).
[79] <u>Id</u>.

finding of "inquiry notice." Merck, 130 S. Ct. at 1793. In deciding the issue, the

Supreme Court clearly held that the limitations period does not begin running

immediately upon a finding of inquiry notice. Merck, 130 S. Ct. at 1793-98

(overturning Theoharous v. Fong, 256 F.3d 1219, 1228 (11th Cir. 2001)[80], and Shah

v. Meeker, 435 F.3d 244, 249 (2d Cir. 2006)). Instead, the Supreme Court held:

> We conclude that the limitations period … begins to run once the
> plaintiff did discover or a reasonably diligent plaintiff would have
> "discover[ed] the facts constituting the violation"—whichever comes
> first. In determining the time at which "discovery" of those "facts"
> occurred, terms such as "inquiry notice" and "storm warnings" may
> be useful to the extent that they identify a time when the facts would
> have prompted a reasonably diligent plaintiff to begin investigating.
> **But the limitations period does not begin to run until the plaintiff
> thereafter discovers or a reasonably diligent plaintiff would have
> discovered "the facts constituting the violation," including
> scienter—irrespective of whether the actual plaintiff undertook a
> reasonably diligent investigation.**

Merck, 130 S. Ct. at 1798 (emphasis added). In other words, "inquiry notice"

marks the beginning of a "period of reasonable diligence," which is intended to

give the plaintiff a reasonable opportunity to investigate and discover all facts

necessary to plead every element of their cause of action, and the statute of

limitations does not begin running until the conclusion of this period. Id.

Even before the Supreme Court's decision in Merck, the Eleventh Circuit

had also recognized the wisdom in affording the plaintiff a "period of reasonable

diligence" to investigate his causes of action after a finding of inquiry notice.

---

[80] The district court here expressly relied upon this overturned decision.

Tello I, 410 F.3d at 1284; Tello v. Dean Witter Reynolds, Inc. ("Tello II"), 494

F.3d 956, 968 (11th Cir. 2007).  In Tello I, this Court concluded that a rule which

affords the plaintiff a reasonable opportunity to investigate would promote judicial

efficiency and better pleading.    410 F.3d at 1287.    The Seventh Circuit had

previously issued a similar opinion in Fujisawa Pharm. Co. v. Kapoor, 115 F.3d

1332, 1337 (7th Cir.1997), which this Court cited with approval.  Tello I, 410 F.3d

at 1284.  In Tello II, the Eleventh Circuit was even more explicit in its holding

that:

> Once inquiry notice occurs, a prospective plaintiff enters a period of
> reasonable diligence, which is the time necessary, exercising ordinary
> investigation, to ascertain sufficient facts to file a complaint.  *Id.*
> Remedial securities laws for combating fraud, such as the SOA, are
> enacted with the recognition that many securities frauds are inherently
> complex and, allowing time to develop the facts, is judicially efficient.
> *Id.* at 1285-88.

494 F.3d at 968.  Thus, after a finding of inquiry notice, the limitations period does

not begin to run until the conclusion of the "period of reasonable diligence."[81]  Id.

Even the district court had previously recognized this rule in In re Miriant Corp.

Sec. Lit., No. 1:02-cv-1467-RWS, 2009 WL 48188, at p. 8 (N.D. Ga. Jan. 7, 2009),

holding that "even if a plaintiff is exposed to 'storm warnings' that disclose the

---

[81] Significantly, "[t]he determination of *when* inquiry notice occurred and *how much* investigation is reasonable for filing suit are necessarily fact-specific to each case."  Tello I, 410 F.3d at 1284.  The Eleventh Circuit recognizes that "questions of notice and due diligence are particularly suited for a jury's consideration."  Id. (quoting Kennedy v. Tallant, 710 F.2d 711, 716 (11th Cir. 1983)).

possibility of securities fraud, the clock does not run until a reasonable investor is 'able to plead a reasonably well substantiated and adequately particularized case of securities fraud....''

B.   The District Court Erred By Determining the Start Date of the Statute of Limitations as a Matter of Law.

In this case, contrary to the holdings in Merck, Tello I and Tello II, the district court decided as a matter of law that the 2005 UFOC provided inquiry notice of the kickback arrangement, and that Plaintiffs/Appellants were not entitled to any period of reasonable diligence after receiving the 2005 UFOC. The district court failed to afford Plaintiffs/Appellants any reasonable opportunity to investigate and discover facts sufficient to support the elements of their claim, specifically: (1) whether Sprock's ownership in SOS meant that he was actually receiving kickback payments; (2) whether Defendants/Appellees acted with scienter[82]; and (3) whether the Plaintiffs/Appellants were damaged as a result of any improper kickbacks received by Defendants/Appellees.

---

[82] After Merck, "a sufficient allegation of scienter requires the pleader to 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind' such that 'it is at least as likely as not that the defendant acted with the relevant knowledge or intent.'" City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 175 (2d Cir. 2011) (citing Merck, 130 S.Ct. at 1796). The Second Circuit holds that "[u]ntil the plaintiff has uncovered—or a reasonably diligent plaintiff would have uncovered—enough information about the defendant's knowledge or intent to satisfy this pleading standard, he has not 'discovered' the fact of scienter, **and the statute of limitations cannot begin to run**." City of Pontiac, 637 F.3d at 175 (emphasis

Instead, the court simply charged Plaintiffs/Appellants with knowledge of the illegal kickbacks as of the presumed date of receipt of the 2005 UFOC, which the district court believed to be prior to August 15, 2005, and then started the limitations period running at that time.[83]    This was clear error based on the precedents cited above.[84]

---

added). On summary judgment, any question concerning whether and when the Plaintiff/Appellants reasonably should have gained knowledge of the facts constituting scienter must be resolved in favor of Plaintiffs/Appellants. Betz v. Trainer Wortham & Co., Inc., 829 F. Supp. 2d 860, 865-66 (N.D. Cal. 2011) ("there is a genuine issue of material fact as to when Betz discovered facts regarding defendants' scienter, especially where, viewing the facts favorably to Betz, defendants made continued representations to Betz that her account would recover and/or that they would 'take care' of the situation); Alaska Elec. Pension Fund v. Pharmacia Corp., CIV. 03-1519, 2012 WL 1680097, at *8 (D.N.J. May 14, 2012) ("viewed in light most favorable to the Plaintiffs, the Washington Post article may have raised the possibility that Defendants acted with scienter, thus prompting a reasonable person to begin investigating. But, the facts contained in this article do not establish a strong inference that Defendants acted with the requisite intent").

[83] In the limitations-period section of the Summary Judgment Order, the district court has attempted to couch its "inquiry notice" determination as logical syllogism, in which the existence of Plaintiffs/Appellants' claim could be inferred simply from Defendants/Appellees' ownership interest in SOS. (Doc. No. 285 (Order), at p. 21.) The district court drew this conclusion based on paragraphs 65-66 of the Second Amended Complaint. (Id.) Specifically, the district court stated, "as Plaintiffs have plead, the kickback occurred by virtue of the Defendant's ownership of SOS." (Id.) However, paragraphs 65 and 66 of the Second Amended Complaint say nothing of the sort. Paragraph 65 states, "SOS and the Defendants derived income from the franchisees' purchases of supplies that were used in their restaurants, despite Moe's false representations to the contrary." (Doc. No. 94, ¶ 65.)   Paragraph 66 states, "Defendants, through their affiliates, were paid a percentage of the sales of supplies that were sold to the Plaintiffs for their use in the operations of the Plaintiffs' Moe's restaurants." (Doc. No. 94, ¶ 66.) Nothing

## IV. THE DISTRICT COURT ERRED IN CONCLUDING THAT, AS A MATTER OF LAW, PLAINTIFF/APPELLANT TITSHAW FAILED TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTION DISTRESS.

### A. The Defendants/Appellees' Conduct Was Sufficiently Outrageous to Support a Claim.

Under Georgia law, the elements of intentional infliction of emotion distress are: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a cause or connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. Garcia v. Shaw Indus., Inc., 741 S.E.2d 285 (Ga. App. 2013). Although it is a question of law for the court to determine whether Defendants/Appellees' conduct "rises to the level of outrageousness required to support a claim of intentional infliction of emotional distress," Yarbray v. S. Bell Telephone and Telegraph Co., 261 Ga. 703, 706, 409 S.E.2d 835 (1991), the court must consider what reasonable men might find outrageous in making its determination. Gordon v. Frost, 193 Ga. App. 517, 521 (1989).

---

in these two paragraphs alleges that Defendant/Appellees were receiving kickbacks *solely* because of Sprock's interest in SOS.

[84] It is also worth noting that in denying summary judgment on the defendants' and the other plaintiffs' fraud claims, the district court acknowledged that "an issue of fact as to Sprock's intent to deceive precludes summary judgment for either party on the fraud count." (Doc. No. 285, pp. 28-29).

35

B.    The District Court Erred by Refusing to Consider the Documentary
      Evidence Submitted by Plaintiff/Appellant Titshaw in Support of the
      Claim.

The district court also refused to consider certain emails submitted by

Plaintiff/Appellant Titshaw in his opposition to Defendants/Appellees' summary

judgment motion.  These emails are internal communications between Sprock and

other Moe's personnel explicitly setting out Sprock's intention to "get even" with

Titshaw and ruin him financially.[88]

---

However, the case law cited by the district court in support of its conclusion only
stands for the proposition that the plaintiff must be the subject or target of the
defendant's abusive conduct.  The district court went further, however, and held
that Plaintiff/Appellant Titshaw's claim fails because he did not learn about
Sprock's plan until this litigation began.  The case law the plaintiff.  Here,
Plaintiff/Appellant Titshaw was the clear target of Sprock and Moe's, who want
Plaintiff/Appellant Titshaw out of the Moe's franchise system and to ruin him
financially.  The fact that Plaintiff/Appellant Titshaw suffered this abuse for years
without knowing that it was part of an ongoing scheme by Sprock and Moe's does
not prevent Plaintiff/Appellant Titshaw from bringing a claim for intentional
infliction of emotional distress.

[88]  Doc. No. 234-5; 234-6; 234-7; 234-8; 234-9 (Exhibits E through I to
Plaintiff/Appellant Titshaw's Response in Opposition to Defendants/Appellees'
Motion for Summary Judgment on Intentional Infliction of Emotional Distress
Claim).

The district court relied on Fed. R. Civ. P. 37 to exclude these emails from evidence based upon Plaintiff/Appellant Titshaw's failure to produce the documents during discovery.[89]    However, Fed. R. Civ. P. 37(c)(1) contains an exception to the "failure to produce" exclusion in situations where the non-producing party's failure to produce was harmless.  Although the Eleventh Circuit does not appear to have adopted any formal test for addressing this exception, the Third, Fourth, Fifth and Tenth Circuits have adopted a multi-factor test in connection with this exclusion analysis: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.  See, e.g., S. States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003).

Here, these factors weigh in favor of admitting the emails into evidence. These emails were internal communications between and among Moe's personnel. Moreover, Defendant/Appellee Sprock was cross-examined on these emails during his deposition and therefore had the opportunity to explain their content.[90]    It is therefore unreasonable for Moe's to argue that it would suffer any unfair surprise

---

[89] Doc. No. 285 (Order).  For purposes of this Appeal, Plaintiff/Appellant Titshaw does not dispute that the documents were not produced by him during discovery.
[90] Doc. 281, pp. 240-263 and Exhibits 21-27 thereto.

by virtue of Plaintiff/Appellant Titshaw's reliance upon the subject emails.

The emails were submitted by Plaintiff/Appellant Titshaw at the summary judgment stage of the proceedings, so there would be no disruption to the trial. The emails are also vital to the analysis of Defendant/Appellee Sprock's conduct towards Plaintiff/Appellant Titshaw and provide direct evidence in Sprock's own words regarding his plan to get even with Plaintiff/Appellant Titshaw and drive him to financial ruin. Finally, these documents are covered by the Protective Order in this case, which contemplates that the parties may use any documents produced in any other related case in this litigation.[91] These documents were produced by Defendant/Appellee Moe's in such a related case and are therefore admissible in the instant case, as well.[92]

Under these circumstances, Defendants/Appellees cannot, in good faith, argue that they have been harmed in any way by virtue of Plaintiff/Appellant Titshaw's use of these emails in opposition to Defendants/Appellees' summary judgment motion against him.

---

[91] Doc. 137, pp. 4-5.
[92] Anne Wheatley v. Moe's Southwest Grill, LLC, et al., In the United States District Court, Northern District of Georgia, Case No. 1:05-cv-02174-TCB.

## CONCLUSION

As shown above, the district court erred in its application of the limitations period relevant to Plaintiffs/Appellants' claims and in its determination that Plaintiff/Appellant Titshaw failed to state a claim for intentional infliction of emotional distress.  Accordingly, the summary judgment should be reversed, and this case remanded to the district court for trial.

Submitted this 22nd day of July, 2013.

CHAMBERLAIN HRDLICKA WHITE
WILLIAMS & AUGHTRY

Scott M. Ratchick
Georgia Bar No. 595136
Jill R. Johnson
Georgia Bar No. 602155

191 Peachtree Street, N.E.            COUNSEL FOR
Thirty-Fourth Floor                   PLAINTIFFS/APPELLANTS
Atlanta, Georgia 30303                DAVID TITSHAW, TAYLOR
(404) 659-1410                        INVESTMENT PARTNERS II, LLC
(404) 659-1852 (FAX)                  D/B/A TIP II ANSLEY, LLC AND TIP II
scott.ratchick@chamberlainlaw.com     SUBURBAN, LLC, ROUNDING
jill.johnson@chamberlainlaw.com       THIRD, LLC, 3M RESTAURANTS,
                                      LLC, AND THE JIMMY LEGS GROUP,
                                      LLC

40

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,949 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

Submitted this 22nd day of July, 2013.

CHAMBERLAIN HRDLICKA WHITE WILLIAMS & AUGHTRY

Scott M. Ratchick
Georgia Bar No. 595136
Jill R. Johnson
Georgia Bar No. 602155

191 Peachtree Street, N.E.
Thirty-Fourth Floor
Atlanta, Georgia 30303
(404) 659-1410
(404) 659-1852 (FAX)
scott.ratchick@chamberlainlaw.com
jill.johnson@chamberlainlaw.com

COUNSEL FOR PLAINTIFFS/APPELLANTS DAVID TITSHAW, TAYLOR INVESTMENT PARTNERS II, LLC D/B/A TIP II ANSLEY, LLC AND TIP II SUBURBAN, LLC, ROUNDING THIRD, LLC, 3M RESTAURANTS, LLC, AND THE JIMMY LEGS GROUP, LLC

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this date served a true and correct copy of the within and foregoing **"APPELLANTS' INITIAL BRIEF"** upon all parties to this action by Federal Express, Overnight Delivery and by using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record:

Steven G. Hill
Martha Logan Decker
Blake H. Frye
Hill Kertscher & Wharton, LLP
3350 Riverwood Pkwy - Suite 800
Atlanta, Georgia 30339-3351

Robert Edward Casey, Jr.
Christopher M. Huffines
Casey Gilson, PC
6 Concourse Parkway -  Suite 2200
Atlanta, Georgia 30328-5353

Robert M. Einhorn
Brian K. Roller
Robert Zarco
Zarco, Einhorn, Salkowski, & Brito, PA
100 SE 2nd Street Suite 2700
Miami, Florida 33131-2122

## [SIGNATURE FOLLOWING ON NEXT PAGE]

42

Dated this 22nd day of July, 2013.

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY

_____

Scott M. Ratchick
Georgia Bar No. 595136
Jill R. Johnson
Georgia Bar No. 602155

191 Peachtree Street, N.E.
34th Floor
Atlanta, Georgia 30303-1747
(404) 659-1410 Telephone
(404) 659-1852 Facsimile
scott.ratchick@chamberlainlaw.com
jill.johnson@chamberlainlaw.com

COUNSEL FOR
PLAINTIFFS/APPELLANTS DAVID
TITSHAW, TAYLOR INVESTMENT
PARTNERS II, LLC D/B/A TIP II
ANSLEY, LLC AND TIP II SUBURBAN,
LLC, ROUNDING THIRD, LLC, 3M
RESTAURANTS, LLC, AND THE JIMMY
LEGS GROUP, LLC